DOUGLASS *against* SATTERLEE AND OTHERS, ADMINISTRATORS
OF SATTERLEE.

In an action of *assumpsit*, on a promissory note, against A., B. &C., administrators of S., A., who alone was taken, appeared and pleaded three several judgments, outstanding against the intestate, amounting to 1,080 dollars and 13 cents; also two judgments against the intestate, jointly with W. & I., amounting to 214 dollars and 38 cents: also a *covenant*, by deed, by the intestate and W. jointly, to pay 900 dollars, at different times, of which 600 dollars was then due and payable; also that the intestate, in his lifetime, owed A., the defendant, 3,982 dollars and 42 cents, which was still due, and was also indebted to B., one of his co-administrators, in the sum of 500 dollars and 92 cents, which was still due; and *plene administravit, &c.* except as to 1,000 dollars, and no *assets* further, except to that sum, which was not sufficient to pay the said judgments, &c.

THIS was an action of *assumpsit* against *Samuel Satterlee*, jun. and *Micah Sterling*, administrators, and *Martha Satterlee*, administratrix, &c. of *Elisha Satterlee*, deceased, intestate, the said *Samuel* being returned in custody, &c. and the said *Micah* and *Martha* not found. The declaration contained three counts; 1. On a promissory note made by the intestate, dated 14th *February*, 1810, for 126 dollars and 47 cents, payable to *Rathbone* and *Douglass*, or order, on demand, and endorsed by them to *Benjamin Chamberlain*, and by him endorsed to the plaintiff; 2. For goods sold and delivered to the intestate; 3. *Quantum valebant.*

The defendant, *Samuel Satterlee*, pleaded a judgment in favour of *D. Cady* and *A. Liddell*, against the intestate, in his lifetime, to wit, in *May* term, 1806, in this court, for 700 dollars of debt, and 13 dollars and 68 cents costs, remaining in full force, &c.; a judgment in favour of *A. Easton* against the intestate, in his lifetime, to wit, in *February* term, 1806, in this court, for 57 dollars and 93 cents of debt, remaining in full force, &c. a judgment in favour of *Charles Richards* against the intestate, in his lifetime, to wit, in *August* term, 1810, in this court, for 308 dollars and 52 cents, remaining in full force, &c. [A judgment in favour of *John* and *Luke Devereaux*, of *November* term, 1810, in this court, against the intestate, in his lifetime, and *Leonard Wheelock* and *Nathan Jones*, for 131 dollars and 80 cents remaining in full force, &c. and a judgment against the same three defendants, in favour of *M. S. Gilbert* and *P. Bours*,

On a *general demurrer* to this plea, it was held that part of the plea, as to the outstanding judgments against the intestate jointly with others, was bad, as it did not aver that the intestate was the survivor of the others; but though bad in part it was not bad *in toto ;* and as there were three outstanding judgments well pleaded, more than sufficient to cover the amount of *assets* specially stated, the other part not well pleaded might be rejected as surplusage, and the plaintiff was not entitled to judgment generally.

An administrator is answerable only to the extent of the *assets* proved in his hands, without reference to his co-administrators; for one executor or administrator is not chargeable with the acts or *devastavit* of his companion, but is only answerable for the assets which have come to his own hands, and for the goodness and truth of his own plea. If assets, however, have come into his possession, and he deliver them over to his co-administrator, he is, then, answerable for their due administration.

Where a plea, as in this case, contains distinct matters, divisible in their nature, as separate and distinct demands, the plaintiff cannot demur generally to the whole, because a part is bad; but should demur as to the matters badly pleaded, and traverse the residue.

of *November* term, 1810, in this court, for 82 dollars and 58 cents, remaining in full force:] [and also that by a certain indenture, dated the 26th *November*, 1808, between *D. Salisbury*, of the one part, and the intestate and *Leonard Wheelock*, of the other part, the intestate and *Wheelock* covenanted to pay 900 dollars, viz. 600 dollars, part of the said sum, to *Samuel Wardell*, in three years from the 14th *September*, 1807; 150 dollars to *Salisbury*, on the 1st *April*, 1814, and 150 dollars to him on the 1st *April*, 1815, and that the said sum of 600 dollars remained unpaid.] That the intestate, at his death, was indebted to the defendant, *S. Satterlee*, in the sum of 2,000 dollars, for goods sold and delivered; and in the sum of 1,982 dollars and 42 cents, on a promissory note, dated the 14th *August*, 1810, which is still due; [and that the intestate, at his death, was indebted to *Micah Sterling*, one of the administrators, in the sum of 400 dollars, for money lent, and in the sum of 100 dollars and 92 cents, on a promissory note, dated the 29th *October*, 1809, payable 60 days after date, which remained unpaid;] and that the defendant, *S. Satterlee*, had *fully administered* all, &c. except goods and chattels to the value of 1,000 dollars, and that he had no other *assets*, except the goods, &c. to the value of 1,000 dollars, which are not sufficient to satisfy the several debts aforesaid, due and owing on the said judgments, &c. aforesaid; and this he is ready to verify, &c.

To this plea there was a general demurrer and joinder. The following points were raised by the plaintiff, and submitted to the court.

1. That the judgment of *J. C. Devereaux* and *L. Devereaux* against the intestate and *L. Wheelock* and *N. Jones*, and also the judgment of *M. W. Gilbert* and *P. Bours* against the same persons, as pleaded, were no bar to the plaintiff's recovery in this cause.

2. That the indenture or bond executed by the intestate and *Wheelock* to *D. Salisbury*, as pleaded, was no bar to the plaintiff's recovery.

3. That the plea of *plene administravit præter*, &c. ought to have been pleaded by the defendant, not only as to the assets in his hands, but as to the assets in the hands of the other administrators.

4. The plea being bad in part, is bad *in toto*.

KENT, Ch. J. delivered the opinion of the court. The questions in this case arise upon the plea of the administrator, *S. Satterlee*, who was the only administrator taken and brought into court.

There is no doubt that the plea is bad in part. The outstanding judgments in favour of *J.* and *L. Devereaux*, and of *Gilbert* and *Bours*, and the debt due on the covenant to *Salisbury*, are neither of them well pleaded. In all these cases, the intestate was jointly indebted with others, and there is no averment in the plea that he was survivor, without which he was not chargeable at law. The case of *Norton* v. *Harvey*, cited in *Tretheny* v. *Ackland*, (2 *Saund.* 48.) is directly in point. That case is also in point, in another respect, as it was there held, that as the plea was bad as to one judgment outstanding, though not as to the other, it was bad *in toto*, and judgment was given for the plaintiff, which was affirmed in the *exchequer-chamber*. It does not appear, from the very imperfect report of that case in *Saunders*, and from the one still more so, in *T. Raym.* 153. that the plea set forth the precise amount of the assets in hand, and it might not have appeared with sufficient certainty that the assets were insufficient to satisfy more than the judgments that were well pleaded. But the fair inference from the plea must be admitted to be otherwise, for it set forth " several judgments for large sums," besides the judgment badly pleaded, and it averred that the executrix had " assets only to a small sum." In the present case the defendant has well pleaded three outstanding judgments which amount to upwards of 1,000 dollars; and he hath pleaded no assets *præter* 1,000 dollars; and the important question then arises whether a plea stating specially the amount of assets, and well pleading judgments more than sufficient to cover that amount, is to be adjudged bad *in toto*, so as to entitle the plaintiff to his judgment generally, for his whole demand, merely because the plea sets forth other judgments which form no protection to the assets.

There is neither good sense nor justice in the rule as laid down in the case to which I have referred, and with respect to executors and administrators, who are only defending *en auter droit*, the rule goes to charge them in their own proper persons for the debts of others, and thereby works intolerable hardship. There is a general rule in pleading that a plea being entire is not divisible; and being bad in part is bad for the whole. (*Earl of*

ALBANY,
Jan. 1814.

DOUGLASS
v.
SATTERLEE.

*Manchester* v. *Vale*, 1 *Saund.* 27.) This rule, when correctly applied, is logical and just. Thus, when a plea being entire, and going to the whole declaration, is good only as to part, and leaves material parts of the declaration unanswered, it is bad *in toto*, for it must contain an answer to the whole declaration, or it is no bar. There are numerous cases in which this rule has been applied. (*Cro. Eliz.* 268. 331. 443. *Cro. Jac.* 27. 1 *Lev.* 48. 1 *Saund.* 27.) So when two persons join in a justification which is bad as to one, the plea being entire and going to the whole declaration, is necessarily to be condemned as no sufficient answer. (*Stra.* 509. 993. 1184.) In all these cases, the fitness of the rule will at once be perceived. But, as Mr. Justice *Buller* observed in *Duffield* v. *Scott*, (3 *Term Rep.* 376, 377.) the rule has no application where the objection is merely on account of surplusage, and if the plea states sufficient matter in bar, even if it states something afterwards which is inaccurate, yet that will not vitiate the whole.

In the present case the plea sets forth sufficient matter in bar, viz. the three outstanding judgments, which will more than absorb the assets in hand, and the adding of other outstanding judgments which are not well pleaded, may be disregarded as surplusage, and it ought not to vitiate the sound part of the plea, on the maxim that *utile per inutile non vitiatur*.

Nor is the rule stated in support of the demurrer so well settled in the books as to require our obedience to it, in opposition to the reason and justice of the case. In *Hancocke* v. *Prowd*, (1 *Saund.* 336.) the rule was disregarded, or set aside, by the court; for to a plea by the administrator of four several outstanding judgments, and *nil ultra*, the plaintiff replied severally to each judgment, that the first judgment was kept on foot by fraud, and the second satisfied, and that the defendant had assets over and above the two remaining judgments, and the replication was held good on demurrer, though if the rule had prevailed, (and which was strongly urged by *Saunders*, the counsel for the plaintiff,) the replication was double and bad, because the avoiding any one of the judgments in the plea would have entitled the plaintiff to his judgment.

The rule is, however, said to have been laid down by Lord Chief Justice *Holt*, in *Parker* v. *Atfield*. (1 *Ld. Raym.* 678. 1 *Salk.* 311. 12 *Mod.* 527.) But it is stated rather as a *dictum* than the governing point in the case, and the reason assigned

does not seem to be sound; for it is said that if the administrator plead three judgments, though he may not have assets more than to satisfy one, it is an admission of assets to satisfy three judgments, and if any one of them be ill pleaded, the plaintiff must have judgment for the value of the judgments pleaded. If the conclusion was just the rule would be applicable, but when the plea contains an explicit averment of assets, it is equally illogical and unjust to let the implied admission of assets prevail over the express averment to the contrary, *expressum facit cessare tacitum.* This case is differently reported in the three books from which it is cited, and it is badly reported in all, and is not entitled to much weight in support of the doctrine for which it is adduced.

The correct rule on this subject is undoubtedly given by Lord Chief Justice *Vaughan*, in the case of *Edgcomb* v. *Dee*. (*Vaugh.* 89.) To the action in that case on simple contract, the administrator pleaded payment of several debts by specialty, and a debt by recognisance to 2,000*l.* still due, and a judgment debt in favour of *Allington*, in the *London* court, to 2,670*l.* and which he had paid, and also a judgment for 7,000*l.* still due to one *Cornwallis*, and *plene administravit præter assets* to the value of the debts so paid, and to the amount of 10*s.* and which remaining assets of 10*s.* were bound by the recognisance, and the judgment of *Cornwallis*. To this plea there was a demurrer, on the ground that the judgment in favour of *Allington*, and the payment of it, was badly pleaded, and that as the plea was bad in part, the plaintiff was entitled to judgment for his whole debt. But the chief justice, in the able opinion which he has preserved, denied this conclusion, even admitting the judgment of *Allington* to be bad, and that until the valid judgment of 7,000*l.* and the recognisance of 2,000*l.* were satisfied, (or either of them, if the other was not well pleaded,) and further assets remained, the plaintiff had no right to be paid; for until then he had suffered no wrong, nor had the administrator done any, or derived any benefit by not satisfying the plaintiff. The true rule of pleading in this case, as he said, (and which was to be deduced from the case in 9 *Edw.* IV. 12. b. and *Tresham's Case*, 9 *Co.* 108.) was, that the plaintiff must avoid all payments pleaded in bar, until assets appear remaining in the defendant's hands; and that the defendant was bound to set forth the amount of the assets, so that it might appear that he had none remaining, even if

one or more of the judgments be badly pleaded. Unless this appeared with sufficient *certainty*, he admitted that the plaintiff would be entitled to judgment, and that if it did so appear, the badness of part of the plea was neither hurtful to the plaintiff nor beneficial to the defendant, for " why should the plaintiff have what he ought not, or the defendant pay what he ought not?" and he observed further, " that the spungy reason that the defendant's plea is all entire, and, therefore, if any part be false, the plea is bad, is not sense." Sergeant *Williams* cites this same argument, and comes to the same result, in his note to the case of *Hancocke* v. *Prowd*, (1 *Saund*. 337. note 1.) and he supposes the true rule may be that if the executor plead judgments obtained against the testator, and that he has not sufficient to satisfy them, or any of them, if any one or more of the judgments be avoided, still there ought not to be a general judgment for the plaintiff, until so many are avoided as to leave assets in the executor's hands. The decision of Lord *Mansfield*, in *Harrison* v. *Boecles*, in 1769, and which is cited with approbation by Lord *Kenyon*, in 3 *Term Rep*. 688. has much bearing on this point, because it is founded on a case analogous in principle. He held that the executor, on *plene administravit*, was not responsible for the whole demand, if the plaintiff could even prove assets unadministered to any small amount, for that would be wrong and absurd; and that he was answerable only to the extent of the assets proved. In deciding a point of such clear and manifest justice, it is said he overturned a host of authorities.

Another objection to the plea is, that it does not extend to the assets in the hands of the other administrators, and if one administrator be responsible for the acts or *devastavit* of a co-administrator, the plea is undoubtedly bad. But I apprehend that is not the case, and that the rule is settled that one executor is not chargeable with the *devastavit*, or other act of his companion, and is only chargeable with the assets which come to his hands, and is answerable only for the goodness of his own plea. (*Hargthorp* v. *Millforth*, Cro. *Eliz*. 318. *Elwell* v. *Quash*, Str. 20. *Baldwin* v. *Church*, cited *ibid*.) When assets have once come to his possession he is answerable for the due administration of them, even if he deliver them over to his co-executor. (*Cross* v. *Smith*, 7 *East*, 246.) It is also equally well settled that each executor has the control of the estate, and may release, pay, or transfer, without the agency of the other, and that exe-

ALBANY,
Jan. 1814.

DOUGLASS
v.
SATTERLEE.

cutors and administrators stand on the same ground, and their powers and responsibilities, in respect to each other, are the same. (*Jacomb* v. *Harwood*, 2 *Ves.* 267. and the case of *Willand* v. *Fenn*, in the K. B there cited.) The plea that the intestate owed his co-administrator a certain debt which remains unpaid may, perhaps, not be well pleaded, but whether it be or be not is quite immaterial, and need not be considered, since the sound part of the plea covers the assets in hand, and more.

The plea contained distinct matters divisible in their nature, in like manner as a plea of set-off of two separate and distinct demands. The plaintiff, therefore, instead of a general demurrer to the whole plea, should have confined his demurrer to the judgments and matters that were illy pleaded, and have traversed the residue of the plea. The different parts of the plea were as different counts in a declaration, or, perhaps, as different parts of the same count when it consists of distinct divisible matter, and then if any part be good it is sufficient on a general demurrer to the whole plea. (*Dowsland* v. *Thompson*, 2 *Bl. Rep.* 910. 1 *Chitty on Pleadings*, 643. *Powdick* v. *Lyon*, 11 *East*, 565.)

The defendant is accordingly entitled to judgment, with liberty to the plaintiff to withdraw his demurrer and reply or take judgment for assets *in futuro* which may come to hand, after satisfying the judgments well pleaded.

Judgment for the defendant.