## Richard M. Gregory
### *v.*
## John W. King.

1. Wagers—*void as to election in another State.* A wager between citizens of this State, as to the result of a presidential election in another State, made prior to the election, is against public policy, and void. Such a wager is equally as immoral and pernicious as one upon the result of such election in the State in which the parties reside.

2. Same—*whether can be recovered back.* Courts of justice will not encourage such wagers by affording aid to either party, and if paid by the stakeholder to one of them, although from the result of the election, under the conditions of the wager, he was not entitled to it, the other can not recover it back.

3. Same—*former decisions.* The decisions in the cases of *Morgan* v. *Pettit*, 3 Scam. 529, and *Smith* v. *Smith*, 21 Ill. 244, wherein they are in conflict herewith, are overruled.

Appeal from the Circuit Court of Morgan county; the Hon. Charles D. Hodges, Judge, presiding.

Mr. Oscar A. DeLeuw, for the appellant

Messrs. Morrison & Whitlock, for the appellee.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

The parties to this suit wagered one hundred dollars each, upon the result of the presidential election in Pennsylvania, in 1864.

The money was deposited with a stakeholder, and after the election was paid to appellant.

Appellee brought suit to recover it back, alleging that it was paid in consequence of false representations.

There is no proof of fraud or improper means used, to obtain possession of the money.

If the wager was void, it can not be recovered.

This court decided, in *Morgan* v. *Pettit*, 3 Scam. 529, that a wager between two citizens of this State, upon the result of an election in the State of Kentucky, was not illegal. To the same effect is the case of *Smith* v. *Smith*, 21 Ill. 244.

The reason given by the court for the decision in 3 Scam. is, "that the bet was made between citizens of this State, residing out of the State where the election is to transpire, and under such circumstances as preclude them from exercising any dangerous or controlling influence over the result."

In the case under consideration, the wager was made a month or two prior to the election.

By our system of railroads and telegraphs, an extensive country has been brought closely together. A rapid passage, by the power of steam, makes Pennsylvania and Illinois near neighbors. Hence, if the inducements exist, the citizens of one State can almost as easily control the result of an election in one State as in another.

But we propose to take a broader view of the question involved. We assume that the wager between the parties, was against sound policy and the best interests of the whole country. A presidential election rouses the public mind, and excites more attention than all of our elections. Every man is deeply concerned as to the result. The very existence of our system of government may depend upon it. Whether the

wager be upon the result in one State or another, the feelings are alike enlisted, the action of the parties alike prompted by an interest in the hazard.

Courts of justice should not encourage such wagers, by affording aid to either party. The law ought not to sanction gambling upon the result of popular elections. They should be free and pure. The elector should not be influenced by any hope of gain or fear of loss. In *Vischer* v. *Yates*, 11 Johns. 21, Chief Justice KENT lays down the following principle, which we adopt: "When we consider the importance of popular elections to the constitution and liberties of this country, and that the value of the right depends upon the independence, moderation, discretion and purity with which it is exercised, we can not but cherish a decision which declares gambling upon such elections to be illegal, as being founded in the clearest and most incontestable principles of public policy."

The presidential election occurs on the same day in every State in the Union. The issue is of general concern. Each citizen, in each State, has a common interest in the maintenance of free government and constitutional liberty. The wager is equally immoral, is equally pernicious in its influence, whether upon the result in the State in which the parties reside, or in a different one.

In one of the cases cited in 3 Scam. *supra*, (*Allen* v. *Hearne*, 1 Term, 56,) the wager was between two voters, as to the event of an election of a member of parliament, before the opening of the poll. It was decided to be illegal, upon the ground that it was corrupt and against the fundamental principles of the British Constitution; and that it was a gambling contract and of dangerous tendency.

Among us, where the whole power of the government is returned periodically to the people, the elective franchise should be preserved from all corrupting influences.

The majority of the court hold, that the wager in this case was against public policy, and void.

We also hold, that it would be against probity and conscience to allow appellee to recover it back.

The cases referred to, and all others in conflict with this opinion, are overruled.

The judgment is reversed and the cause remanded.

*Judgment reversed.*