## Whitfield v. Woolf.

*Action on Promissory Note, by Payee against Maker's Executors.*

1. *Devastavit by premature payment of legacy.* — If an executor voluntarily pays or assents to a legacy before the expiration of eighteen months from the grant of letters testamentary, though he acts in ignorance of an outstanding debt, which is afterwards presented within the time prescribed by law, he is guilty of a *devastavit.*

2. *Liability of executor for devastavit.* — When an executor has been guilty of a *devastavit* by a premature payment of legacies, he· cannot absolve himself from liability to creditors by showing that his co-executor had received assets enough to pay all the debts.

3. *Resignation of executor pending suit.* — An executor, against whom a suit is pending, may relieve himself from liability by resigning, settling his accounts with the proper court, and surrendering the unadministered assets to a successor in the administration ; but, if one of several co-executors can, in any case, absolve himself from liability in a pending suit by a creditor, by resigning, settling his accounts, and surrendering to his co-executor the unadministered assets, he certainly cannot do so when he has been guilty of a *devastavit* by a premature payment of legacies.

APPEAL from the Circuit Court of Marengo.

Tried before the Hon. JAMES Q. SMITH.

This action was brought by Gaius Whitfield against Henry A. Woolf and Willis P. King, as the executors of the last will and testament of William King, deceased ; was founded on a promissory note for $5,400, executed by said William King and one Richard Jones (who was not sued), dated May 22, 1860, and payable on the 1st June, 1861, to said plaintiff or order ; and was commenced on the 4th September, 1866. Willis P. King, one of the defendants, made no defence, and judgment by default was entered against him. Henry A. Woolf, the other defendant, appeared, and filed six pleas, the last of which was as follows : —

" 6. And for a further plea," &c., " defendant says, that since the commencement of this suit, to wit, on the 13th day of September, 1869, he fully and finally settled his accounts as

VOL. LI.

[Whitfield v. Woolf.]

such executor, with and in the probate court of said county; and that all the assets of the said testator, of any value, which came to his hands, and which remained unadministered, were delivered to Willis P. King, the remaining executor of said William King, deceased; and that he thereupon resigned his executorship of the will of said testator, by a writing subscribed by him, and filed in the probate court of said county; and that his said resignation was thereupon duly entered of record in said probate court; and that he was thereupon, by the judgment and decree of said probate court, duly discharged from all further accountability as such executor, as by the record and proceedings in said court remaining of full force and effect will more fully appear."

The plaintiff demurred to this plea, but his demurrer, which requires no special notice, was overruled; and he then filed a replication, which, so far as the reporter can interpret the manuscript of the record, was in these words: "That all the assets of said defendant's testator, of any value, which came to said defendant's hands, and which remained unadministered, were not delivered to Willis P. King, the remaining executor of said William King, but the facts in respect thereto are — that said defendant, H. A. Woolf, while acting as executor as aforesaid under letters from the probate court of Marengo county, and before his settlement with said probate court, mentioned in said plea, voluntarily, and without any order of court, and without taking a refunding bond, distributed to the legatees of his testator, from the assets in said defendant's hands as executor to be administered, a large amount of said assets, more than sufficient for the payment of plaintiff's demand now declared on, although plaintiff's said demand was duly presented to said defendant as such executor while he was such, and within eighteen months from the grant of letters upon said estate; and that said assets, so distributed, have not been delivered or paid to said remaining executor."

The defendant demurred to this replication, and assigned the following causes of demurrer: "1. The said replication does not show that the acts of said defendant, therein set forth, are illegal. 2. It does not appear from said replication that there was not a sufficiency of assets in the hands of said W. P. King as executor to pay said debt now sued for. 3. For aught that appears from said replication, there is a sufficiency of assets in the hands of said King as executor to pay said debt. 4. When an estate is solvent, and there is more than a sufficiency of assets in the hands of the executors to pay and discharge the debts and liabilities of the estate, the executor may lawfully distribute the surplus assets amongst the distributees, without any order of court, and without taking any refunding bond.

[Whitfield *v.* Woolf.]

6. Said replication does not show that the assets delivered by this defendant to said W. P. King as executor were insufficient to discharge the debts and charges against said estate. 7. Said replication takes issue with the plea, and also sets up matters in avoidance of the plea." The court sustained this demurrer.

By leave of the court, the defendant also filed another plea, which was as follows : " 7. For a further answer to said complaint, defendant says, that he received as executor as aforesaid assets of said estate of about the value of $13,471, and said Willis P. King, the other executor, received other assets of the value of about $36,033 ; and that afterwards, to wit, before the plaintiff's claim was presented to this defendant, or to the other executor, and before they had any knowledge or information of the existence of said claim, and before the commencement of this suit, this defendant, well knowing that the said estate was solvent, and that there was in the hands of the said executors a sufficiency of assets to pay all the debts and liabilities of the said testator, and all charges and legacies in said will mentioned, discharged all the debts and liabilities of said estate, excepting the said claim of said plaintiff, and paid to the legatees of the said testator the sum of about $9,573.54, and another large sum of money, to wit, the sum of $1,200, in satisfaction of the charges, costs, and expenses of his administration, and duly delivered over to W. P. King, his co-executor, the residue of the assets of said estate which came to his hands, and thus administered all the assets of said estate which came to his hands to be administered, leaving in the exclusive possession of said Willis P. King, as such executor, assets of said estate of great value, to wit, of the value of $33,000, a sum much more than sufficient to discharge the other debts, liabilities, and charges against said estate ; and that the debts and liabilities of said estate, exclusive of the plaintiff's demand, did not exceed the sum of $1,000, and the same had been paid by this defendant ; and that of the assets of said estate which came to the hands of said Willis P. King, as such executor, a large part thereof, of great value, and more than sufficient to pay said debt, to wit, of the value of $27,000, remains in the hands of said Willis King, as such executor, unadministered. And this defendant further says, that on the 13th day of September, 1869, he finally settled his accounts as such executor in the probate court of said county of Marengo, and resigned his executorship, by a writing subscribed by him, which was entered of record in said probate court ; and that he delivered over to the said W. P. King, as executor as aforesaid, all the assets of said estate of which this defendant had possessed himself, and which were not by him administered as aforesaid ;

[Whitfield v. Woolf.]

and that upon the settlement of his accounts as aforesaid, this defendant was, by the judgment and decree of said probate court thereupon rendered, duly discharged from all further accountability, as executor as aforesaid, as by the record and proceedings of said probate court remaining in full force and effect will fully appear."

The plaintiff demurred to this plea, and assigned the following causes of demurrer: " 1. That the assets of said decedent's estate which came to said defendant's hands as executor were by law charged with the payment of said decedent's debts, before they could be distributed to legatees, and defendant could not and did not discharge himself from liability to apply the same to plaintiff's demand by paying over said assets to legatees, as set forth in said plea; and that his resignation and settlement, by him pleaded, do not exonerate him from liability to plaintiff to pay the demand sued on. 2. That said plea confesses assets more than sufficient to pay plaintiff's demand, and does not deny that said demand was duly presented according to law, and does not show a right in said defendant to pay or distribute any part of said assets to legatees, leaving plaintiff's demand unpaid." The court overruled this demurrer.

The rulings of the court on the demurrers, — that is, sustaining the demurrer to the replication to the sixth plea, and overruling the demurrer to the seventh plea, — are now assigned as error.

R. H. SMITH, with whom was F. S. LYON, for appellant. — All the property of a decedent's estate is by law charged with the payment of his debts. Rev. Code, § 2060. An executor's first duty is to pay the debts of his testator. He cannot discharge himself from liability to creditors, especially after suit brought, by resigning, and making a settlement with the probate court. For assets wasted, or not duly administered, he still remains liable. Rev. Code, § 2040 ; *Skinner* v. *Frierson*, 8 Ala. 915 ; *Gayle* v. *Elliott*, 10 Ala. 264 ; *Driver* v. *Riddle*, 8 Porter, 343 ; *Thomason* v. *Blackwell*, 5 Stew. & P. 181 ; *Deane* v. *Portis*, 11 Ala. 104 ; *Thrash* v. *Sumwalt*, 5 Ala. 13 ; *McNeill* v. *McNeill*, 36 Ala. 109.

WM. M. BROOKS, *contra.*

BRICKELL, J. — We shall not pass on the demurrer to the sixth plea, as the counsel for the appellant, in the argument he has submitted, asserts the ruling of the court on that demurrer to be of no practical consequence, because the facts of the case are fully presented by the replication to that plea,

[Whitfield v. Woolf.]

to which a demurrer was sustained, and by the seventh plea, to which a demurrer was overruled.

If the sixth plea can be regarded as presenting a defence to the action, the replication was a full and complete answer to it. The primary duty of an executor is the payment of the debts of the testator. This duty binds him both at law and in equity. The assent to, or payment of legacies, leaving debts of the testator outstanding, inverts the order in which the law appropriates the assets. It gives priority to the rights and claims of legatees, which are by law secondary, and subordinated to the rights of creditors. At common law, if an executor voluntarily, in ignorance of outstanding debts, assented to, or paid legacies, he was guilty of a maladministration, and was liable to creditors as for a *devastavit*. 2 Lomax on Ex'rs, 208; *Johnson* v. *Fugua*, 1 Dana, 514; *Cookus* v. *Peyton*, 1 Gratt. 431. It was esteemed his own folly to make such payments, or yield assent to legacies, without the protection of the decree of a court of equity, or without demanding the indemnity of a refunding bond. An observance of the statute will relieve the executor from the possibility of incurring a liability to creditors by the payment of, or assent to legacies. All claims of creditors must be presented to him within eighteen months from the time they accrue, or from the grant of letters testamentary. R. C. § 2239. Until the expiration of this period, he cannot be compelled to pay or assent to legacies. *Williamson* v. *Mason*, 18 Ala. 87. After the expiration of this period, if an application is made to compel the payment of, or assent to legacies, before a final settlement, the legatee is required to execute a refunding bond, conditioned to refund the amount paid, or to return the property received, or pay the value thereof, with interest, should the assets prove insufficient for the payment of debts and charges. This bond stands as a security, not only to the executor, but to creditors. R. C. §§ 2098, 2113. It is erroneous to decree the payment of legacies without requiring such bond. *Johnston* v. *Fort*, 30 Ala. 78. The executor may at any time report the solvency of the estate, to the court of probate, and obtain an order of distribution; but such order, if made before a final settlement, is not a defence to any action brought against him. R. C. § 2097.

The question raised by the demurrer to the replication was presented to this court in *Thrash* v. *Sumwalt* (5 Ala. 13), and it was there held: "An administrator is bound to a creditor, in consequence of the assets which come to his hands to be administered; and a distributee has no claim whatever, until the demands of all creditors are satisfied, or legally barred. If, then, the administrator prematurely settles with the distributees, he does not discharge the assets which may afterwards

[Whitfield v. Woolf.]

come to his hands, or himself from liability on account of those already received; nor is it any answer to the creditor, that a distribution has been decreed by the orphans' court. The creditor cannot be forced into that court, to litigate any question with the administrator, or with the distributees, except in case of reported insolvency. In all other cases, he deals with the administrator; and when his demand has been presented within the proper period, it is the duty of the administrator to pay it, as soon as the assets are converted into money." This decision was approved and followed in *Deane* v. *Portis*, 11 Ala. 104.

At common law, an executor, having once accepted the trust, could not subsequently resign, or renounce it. He was compellable to its performance, until it was finally discharged, or his authority terminated by a judicial revocation. Toller on Ex'rs, 42; Wentworth on Ex'rs, 90; 4 Bac. Ab. 53; 1 Williams on Ex'rs, 242. The authority of an executor was, at common law, derived from the will, not from its probate, or from the grant of letters testamentary. Before probate, he could take possession of the personal assets, pay and collect debts, assent to and pay legacies, sell or otherwise dispose of chattels, and do nearly every act which an executor could rightfully do, except commence suits, in which he was bound to make profert of letters testamentary. 1 Williams on Ex'rs, 255. If, before probate, one of several executors administered a part of the assets, he was charged with such as he had received, although he refused to prove the will, and probate was granted to his co-executor alone, to whom he paid the money. 2 Williams on Ex'rs, 1655. So, after probate, and the grant of letters testamentary to the executors jointly, the one may not absolve himself from liability for assets he has received, by paying them to his co-executor. He could not thus exonerate himself, and shift the responsibility, imposed by law, in consequence of his having received assets which he ought duly to have administered. *Douglass* v. *Saterlee*, 11 Johns. 16; *Edmonds* v. *Crenshaw*, 14 Peters, 166; *Cross* v. *Smith*, 7 East, 246.

The statutes authorize an executor or administrator to resign; but his liability continues until he makes settlement of his accounts, and delivers the assets unadministered to his successor. R. C. §§ 2039, 2040, 2279; *Driver* v. *Riddle*, 8 Port. 343; *Skinner* v. *Frierson*, 8 Ala. 915; *Gayle* v. *Elliott*, 10 Ala. 304. Whether these statutory provisions authorize the resignation of one of several executors, and thereby the conversion of a joint into a separate administration, is a question we will not consider in this case. Nor will we inquire, whether they operate a change of the common law, and authorize one of several

executors, by a transfer of the assets he has received to his co-executor, to exonerate himself from liability.    Whatever may be the law on these points, an executor or administrator, who claims an exemption from liability to a creditor, by a resignation, and a settlement of his accounts, and a surrender of the unadministered assets either to a successor or a co-executor or co-administrator, must not have been guilty of a *devastavit*. He must have duly administered the assets which came to his hands, or have surrendered them to his co-executor or co-administrator, or to his successor.    If he has been guilty of waste, or conversion, or a misapplication of the assets, he cannot be exonerated from liability for it; but to that extent must account to the creditor injured by it.    When a sole executor or administrator resigns, makes settlement of his accounts, and surrenders the unadministered assets to a successor, a pending suit against him can, on motion, be revived against the successor.    R. C. § 2284.    The unadministered assets, all the creditor could have pursued, if there had not been a resignation, and a change in the administration, are still left within reach of his legal remedies.    But if, by resignation, and a settlement of his accounts, the executor or administrator could absolve himself from liability for assets not administered, or wasted, or converted, or misapplied, the creditor would be, if not remediless, embarrassed in the enforcement of his rights.    Generally, one executor or administrator is not liable for the *devastavit* of his companion, in which he does not participate.    If the statutes authorize one of several executors, by resignation, to discharge himself from a pending suit, and the continuance of the suit against his companion, can he be held liable for the *devastavit* of the resigned executor?    Can the resigned executor thus exonerate himself, and shift his responsibility?    The case presented is even stronger.    The appellee has voluntarily paid legacies in preference to debts, within the time allowed by law to creditors for the presentment of claims.    Shall the co-executor be charged with this open violation of duty by his companion, and the guilty agent be relieved?    Or shall both be relieved, and the creditor driven to the pursuit of doubtful, dilatory remedies in another tribunal, against the legatees who received payment?    The law and common justice fix the liability where it belongs, on the executor who departed from the line of his duty, and preferred the legatees to creditors.    If our statutes authorize one of several executors, by resignation, and settlement of his accounts, and a surrender of unadministered assets, to free himself from liability to a pending suit, and the continuance of the suit against the remaining executor, the resigned executor must place the assets not administered within reach of the creditor's judgment.    He must

[Whitfield v. Woolf.]

surrender them to his co-executor against whom judgment can be obtained. If he does not, he is not entitled to a discharge from the suit. The replication was a full answer to the sixth plea, and the court erred in sustaining the demurrer to it. The settlement made by the appellee in the court of probate cannot affect the question of appellee's liability to the appellant. As to the appellant, that settlement is *res inter alios acta*. He had not the right, or the opportunity, to be heard in opposition to it.

The demurrer to the seventh plea should have been sustained. This plea confesses the payments to legatees, voluntarily, of a sum sufficient to have satisfied the debt of the appellant. These payments are averred to have been made with a knowledge of the solvency of the estate, and that there were other assets of the testator in the possession of his co-executor, sufficient to satisfy the debt of appellant, and all other debts against the testator. The payments to the legatees are averred to have been made without notice of, and in ignorance of the existence of the appellant's claim. The plea also avers the resignation of the appellee, and a settlement of his accounts in the proper court. The resignation and settlement were after the commencement of this suit, and it is not averred that the appellant's claim was not presented within the period prescribed by law.

When the appellee made the payments to the legatees, voluntarily, leaving debts unpaid, if such payments were made within the period prescribed for the presentment of claims, he committed a *devastavit*. He perverted the order of appropriation of the assets prescribed by law. His knowledge of the solvency of the estate cannot change the character of his act. It remains a *devastavit*. If he had reported to the proper court the solvency of the estate, and made the payments under a decree of that court, the statute reserves his liability, declares such report and decree shall not be a defence to any action brought against him. His liability is not lessened because his act was voluntary, unsanctioned by judicial decree. Nor does the fact of assets sufficient to pay all debts, remaining in the hands of his co-executor, relieve him from liability. The law cannot tolerate that the creditor should be compelled to accept from another responsibility for the wrong of the appellee. It does not permit the appellee thus to exonerate himself from liability, and shift it to another. The allowance of the defence this plea presents, would open a wide door for the grossest frauds on creditors. A testator may, by express provision in his will, relieve his executor from giving security for the faithful performance of his duties. A creditor, or any one else having an interest, cannot require security from the executor in such case, unless he can show his interest is endangered

[Matthews *v.* Hobbs ]

from a want of it. R. C. § 2005. A testator appoints two executors, one of whom is solvent, and the other insolvent ; the creditor relies, as he may, on the responsibility of the solvent executor. But he pays away the assets he receives to legatees, resigns, settles his accounts with the probate court, where the creditor cannot be heard ; and when sued by the creditor, he answers, that he has settled with the court of probate, paid away the assets he received to legatees, but left enough in the hands of an insolvent companion to meet the demand. The creditor, lured into security by a knowledge of the solvency of the executor, finds that his claim, which the law commanded to be paid before legatees could seek any recovery, is lost, and they are satisfied. The appellee cannot absolve himself from liability, except by showing an administration of the assets he received. It is not an administration, but maladministration, to make payments to the legatees before the payment of debts. The solvency of the estate, — the want of knowledge of appellant's claim, eighteen months from the grant of letters testamentary not having expired, nor the existence of assets in the hands of, or for which the co-executor may be responsible, sufficient to meet the demands against the testator, cannot justify the payments to the legatees in preference to debts. He should have waited the expiration of the eighteen months, or have protected himself by a refunding bond. It was his own folly, or because he was willing to risk the payment of debts from other sources, to part with the assets to legatees before he could by law have been compelled ; and he must bear the consequences. That on his settlement the court of probate discharged him from further liability, cannot affect the appellant. His liability to appellant that court could not, on that settlement, have enforced. It was not in litigation before that court, and could never have been drawn within its jurisdiction, unless the estate of the testator had been by the appellee reported insolvent.

For the errors we have pointed out, the judgment is reversed, and the cause remanded.