Order accordingly.

---

## SUTHERLAND and others *against* BRUSH, CROSBY and PALMER.

A bare act of sale of the *assets*, by an executor, is a sufficient indemnity to the purchaser, if there is no collusion. As where an executor assigned and delivered bonds and notes belonging to the estate of his testator, by way of indemnity to *B.*, who had become his surety: *Held*, that *B.* was entitled to hold the securities for his indemnity, against the devisees or legatees; the delivery to him being for a valuable consideration, and without fraud or collusion. And it would have made no difference, if *B.* had known that the securities were part of the assets.

An executor is not responsible for the *devastavit* of his co-executor, except so far as he has concurred in such waste, or misapplication of the assets.

*ISRAEL TOTTEN*, by his will, dated *March* 9, 1811, after certain bequests, devised the residue of his estate to

VOL. VII.          3

1823.

SUTHERLAND
v.
BRUSH.

the plaintiffs, (who are infants, suing by their next friend,) and appointed the defendants, *Palmer* and *Crosby*, his executors. After the death of the testator, the executors proved the will, on the 8th of *April*, 1816, and filed an inventory of the personal estate, amounting to 15,161 dollars and 13 cents, most of which consisted of bonds, notes, and other choses in action. In the inventory, were mentioned, a note of *Z. Newcomb*, for 1192 dollars and 22 cents, including interest; a note of *S. Mungh, D. Crosby* and *S. Waring*, for 168 dollars and 78 cents; a note of *S. Waring, J. Waring* and *D. Crosby*, for 123 dollars; two notes of *J. Johnston*, amounting to 33 dollars and 15 cents; and a note of *J. Johnston, L. Barton* and *H. Sherman*, for 470 dollars and 88 cents. The bill charged, that after making the inventory, and before it was filed, the executors settled the note against *Newcomb*, and took a bond from him to the defendants, *P.* and *C.*, for 1082 dollars; that the executors, or one of them, settled the demands against *Johnston* and *Barton*, and took a sealed note of *Roswell Kinney*, for 600 dollars, made payable to the defendant, *C.* That the executors also settled the demands against *D. C.* and others, and received a note, payable to the defendant *C.*, or bearer, for 253 dollars and 24 cents. That *C.* had been appointed a commissioner of loans, with *R. Johnston*, under the act, and *Palmer* and one *Rufus Parks* were his security, and the defendant *B.* became security for *R. J.*, and all joined in a bond to the state for the faithful performance of the duties of commissioners, &c. by *C.* and *R. J.* That *C.*, to indemnify *J. P.* and *B.* against that bond, on the 26th of *May*, 1818, delivered the note of *Peter Crosby*, to *W. H. Johnston*, as part indemnity to *R. J.*, and afterwards *C.* delivered to *Brush* the bond of *Newcomb*, and the sealed note of *Kinney*, and which were a part of the testator's estate, to be collected and applied to the payment of the balance which might be found due from *C.* to the state on the bond, and thus to discharge *P.* and *C.*

from their liability. That *Brush* had commenced a suit on the bond against *Newcomb*, in the name of *C.* and *P.*, and had recovered a verdict in *November*, 1818; and had sued on *Kinney's* note, in the name of *C.*, and obtained a *cognovit* for 600 dollars. The bill charged, that the note of *P. Crosby*, was delivered to *W. H. J.*, with the privity and consent of *Palmer*, who knew that it belonged to the estate of the testator; and that *P.* and *B.* both knew at the time, that the bond of *N.* and the note of *K.* were delivered to *B.*, that they were not the property of *C.*, but part of the testator's estate, and that they were so delivered with the knowledge and approbation of *Palmer*. Prayer, for an injunction, to prevent any further proceeding by the defendants in the suits against *N.* and *K.*, and against appropriating the avails of the bond and note to their use, and that *P.* and *C.* be decreed to render an account of their executorship, and to pay over to *George Ingraham*, as guardian of the plaintiffs, the moneys, &c. and for general relief.

The defendant, *Brush*, in his answer, denied, that when he took the assignment of the bond of *N.* and note of *Palmer* and *Crosby*, he knew that they were part of *Totten's* estate; but he admitted that he had reason to believe that the demand against *Kinney* was, in some way, connected with, and had grown out of the estate of the testator; and he alleged, that the assignment was in good faith, and without any design to defraud the plaintiffs or others, or to create a *devastavit* by *C.* and *P.*, or either of them ; that he had no knowledge, at the time, of the affairs of the estate, nor of the state of the accounts between it and the executors, nor did he know but that *C.* was in advance to the estate.

The defendant, *P.*, in his answer, denied that he was, in any manner, connected with *B.* or *J.* in obtaining the assignments, or that he knew of the assignments, or of any intention to make them, until long after they were made;

1823.

SUTHERLAND
v.
BRUSH.

and he denied that he was privy or consenting thereto ; and he averred that, to his knowledge or belief, no part of the moneys collected on the securities assigned, had been paid on the bond to the state; nor were the moneys or securities in his power, or under his control.

*November* 27, 1822.   The cause was this day brought o a hearing, on the pleadings and proofs.

*P. Ruggles* for the plaintiffs.   He cited 3 *Bro. C.* 112. 115. 117.   *Cro. Car.* 212.   1 *P. Wms.* 355.   4 *Johns. Ch. Rep.* 305.   1 *Bro. Ch.* 68.

*J. Emott*, contra.   He cited 1 *Atk.* 463.   3 *Atk.* 235. 1 *Ves.* 215.   2 *Ves.* 269.  `14 *Ves.* 352.   4 *Term Rep.* 625, note. 632. 642. 644.

THE CHANCELLOR.   This is a bill to call two of the defendants to account, as executors of *Totten ;* and they are charged with a waste of the assets, and that the defendant *B.* has received part of the assets from *C.*, one of the executors, under circumstances that authorize the plaintiffs, as legatees, to call upon him to refund.   It is attempted, also, to make the executor, *P.*, who is solvent, responsible for the *devastavit* of the executor, *C.*, who is insolvent.

1. The defendant, *Brush*, states, in his answer, that he did receive from the defendant, *Crosby*, a bond and mortgage from *Zaccheus Newcomb* to the two defendants, *P.* and *C.*, and also a note from *Roswell Kinney* to the defendant *C.*, and that he received them by way of indemnity, for being surety for the defendant, *C.*, as one of the commissioners of loans, and with intent to apply the proceeds to discharge the debts of *C.*, as such commissioner.   This was a fair and valuable consideration for the assignment and delivery of those securities; and I see no good reason why the defendant, *B.*, should not be entitled to hold those securities, and apply the proceeds to his indemnity.   One of

them, was a note given directly to the defendant *C.*, and the other was given to the two defendants, *P.* and *C.*, and nothing appeared upon the face of either of the instruments, to show that they constituted part of the assets of the estate of *Totten.* If they had even appeared in that character, still the defendant, *B.*, had a right to presume that the other defendants were fairly and fully authorized to assign them, by way of indemnity, for their own advances in the administration of the estate.

In *Nugent* v. *Gifford*, (1 *Atk.* 463.) an assignment of a mortgage term (and it was a mortgage to trustees in trust for the testator) was made by the executor to the plaintiff, in satisfaction of a debt due from the executor to the plaintiff; yet Lord *Hardwicke* held the assignment to be valid, and that the creditors of the testator were not entitled to follow the property. A purchaser from an executor has no power of knowing the debts of the testator; and if he did know it was testamentary assets, it would not affect the validity of the assignment, as it was an alienation for a valuable consideration, and no fraud or collusion with the executor to misapply the assets appeared. The doctrine in that case has been repeatedly advanced; and it appears to be an established principle, both at law and in equity, that a bare act of sale of the assets by the executor, is a sufficient indemnity to the purchaser, if there be no collusion. (*Mead* v. *Lord Orrery*, 3 *Atk.* 235. *M'Leod* v. *Drummond*, 14 *Vesey*, 352. *Whale* v. *Sir Ch. Booth*, 4 *Term Rep.* 625, in notis. And the admission of the Judges, in *Farr* v. *Newman*, 4 *Term Rep.* 632. 642. 649.) In the case of *Whale* v. *Sir Ch. Booth*, Lord *Mansfield* observed, that "if at the time of the alienation, the purchaser knew they were assets, this was no evidence of fraud, for all the testator's debts may have been already satisfied; or if he knew that the debts were not all satisfied, must he look to the application of the money? No one would buy on those terms. There

A bare act of sale by an executor, is an indemnity to the purchaser, if there be no collusion.

He is not bound to look to the application of the money.

1823.

SUTHERLAND
v.
BRUSH.

is one exception, indeed, where a contrivance appears between the purchaser and executor, to make a *devastavit.*"

But in this case, the defendant, *B.*, denies that when he took the bond and note, he knew that they were a part of the estate of *Totten ;* though he had reason to believe, that the debt of *R. Kinney* was in some way connected with, or had grown out of the estate of *Totten.* He avers, that the assignments were taken in good faith, without any fraud or design to create a *devastavit* on the part of either of the executors ; and that he had not then any knowledge of the state of the assets, nor of the accounts of the defendant *C.*, as executor, nor but that he was in advance for the estate.

There is no evidence sufficient to destroy the truth of these averments in the answer ; and there is no evidence of fraud or collusion. The plaintiffs clearly, therefore, cannot pursue those choses in action, or the proceeds thereof in the hands of *B.* ; and the bill, as to him, ought to be dismissed.

One executor is not responsible for the *devastavit* of his co-executor, if he did not know and assent to it, at the time.

2. The defendant, *P.*, is not responsible for the *devastavit* of his co-executor, *C.*, any farther than he is shown to have been knowing and assenting, at the time, to such *devastavit,* or misapplication of the assets of the estate. Both the executors could not, with any kind of convenience, jointly possess and hold all the assets. The assets must, from the necessity and reason of the case, have been distributed between the executors, for the purpose of collection and security ; and it appears to be settled, and upon very just principles, that one executor shall not be chargeable with the waste of the other, except so far as he concurred therein ; and that merely permitting the other to possess the assets, without going further, and concurring in the application of them, does not render him answerable for the receipts of the other. (*Hargthorpe* v. *Milforth, Cro. Eliz.* 318. *Harvey* v. *Blakeman,* 4 *Vesey,* 596.) Each executor is

liable only for his own acts, and what he receives or applies, unless he hands over the moneys collected or received to his co-executor, or joins in the direction or misapplication of the assets. This is the distinction which was taken and supported, by the authority in the cases of *Monell* v. *Monell*, (5 *Johns. Ch. Rep.* 283.) and *Manahan* v. *Gibbons*, (19 *Johns. Rep.* 427.)

The question of fact then occurs, whether *P.* was knowing and assenting to the assignment by *C.* of the bond and mortgage and note, above mentioned, to the defendant, *B.* He denies, in his answer, that he was privy or consenting to such assignment, or that he knew of it until long after it was made. But there are three witnesses, who assert, that *P.* admitted, in their hearing, his knowledge of, and assent to, the assignment, or deposit, by *C.*, of these instruments; and that *C.* had previously advised with him on the subject. The witnesses concur, in substance, in that fact; and the proof appears to be sufficient to establish it, in opposition to the answer, and consequently sufficient to charge *P.*, equally with *C.*, with the amount of the bond and note. Assuming that *C.* did advise with *P.* on the expediency of the assignment, there is every reason to believe, that *P.* might, with due remonstrance, have prevented this misapplication of the trust-property; and if, instead of remonstrating against it, he encouraged it, he is most equitably responsible for the loss.

With respect to the charges of waste and negligence, in other instances, I shall leave them for further examination, before the Master. If it shall appear to his satisfaction, that any debts have been lost by the wilful negligence, or the want of reasonable and ordinary care and diligence, in either, or both, of the executors, the loss ought to be charged to one or both of them, to whom the default is justly to be imputed. He ought, also, to allow for the costs and expenses accrued, in the due performance of the trust,

*1823.*

SUTHERLAND
v.
BRUSH.

Each executor is liable for his own acts, unless he hands over the moneys received by him to his co-executor, or joins in the misapplication of them.

so far as the same shall appear to have been reasonably incurred.

I shall, therefore, direct a reference, upon the principles and with the directions here stated.

Decree accordingly.