BRADLEY B. BURT, Respondent, *v.* ERASTUS P. BURT, Appellant.

A decree in an action by one executor against his co-executor, requiring the latter to place the securities and papers in his possession, belonging to the estate, in the custody of a bank; and that both he and the plaintiff, deposit all moneys thereafter collected therein, to be drawn out only on their joint check, is not authorized by the fact, that the defendant maintains exclusive manual possession of the securities belonging to the estate, and refuses to deliver over any portion thereof to the custody of his co-executor, in the absence of any proof that the interests of the beneficiaries under the will are jeopardized by such exclusive possession.

The defendant being, as one of the executors, properly in possession, all that the plaintiff, as co-executor, can justly require is, that when any step in the settlement or administration of the estate is to be taken, which required the presence of the securities, or any part of them, either to indorse upon a bond or mortgage payments thereon, or surrender up the same if paid in full, or for any proper purpose, then they should be produced.

If the defendant refused, at the proper time, to apply the assets to the payment of the debts, the plaintiff could apply to the surrogate; and if there was mismanagement or misappropriation, or conduct endangering the interests of creditors or legatees, application could be made to the surrogate at any time.

*Wood* v. *Brown* (34 N. Y., 337), distinguished and limited.

(This cause was argued on the 16th of June, 1869, and decided the 23d of September, 1869.)

APPEAL by the defendant from the judgment of the General Term of the Supreme Court, in the fifth district, affirming a decree in favor of the plaintiff against the defendant, made

upon the report of a referee. The parties are brothers, and were both appointed executors in their father's will. The complaint alleged that the defendant had exclusive possession of the securities and papers of the estate, and refused the plaintiff access to them; and refused to deliver to the plaintiff even one half of those securities; and excluded him from all participation in closing up the estate.

It asks that a receiver be appointed, and the defendant be compelled to hand over to the receiver all the securities and property in his hands.

The action was referred to Albertus Perry, as sole referee, and the decree made upon his report, in favor of the plaintiff, together with the facts appearing in the case, are sufficiently stated in the opinion of the court.

*John C. Churchill,* counsel for the appellant, cited Hardress, 314; 2 Bro. Ch. R., 95, 96, 114; 5 John. Ch., 283, 294; 8 Geo., 388, 394, 403, 404; 3 You. & Coll., 359; 16 Ves., 477; 2 Molloy, 186; 27 Beavan, 568; 22 Beavan, 257, 263; 2 Hill (Sou. Car.) R., 277; 11 Ves., 333; 7 Barb., 120, 124; 7 Johns. Ch., 17, 23; 8 Paige, 152, 154, 155, 159, 160; 11 Johns., 16, 21; 1 Wend., 583, 589, 591; 11 Paige, 206, 209; 2 Kent, 416; 7 East, 246; *Ochletree* v. *Wright* (1 Dev. & Batt., 336); 2 Story Eq. Jur., §§ 828, 836; Willard Eq. Jur., 336; 3 Daniels Ch. Pr., 1956 *et seq;* 4 Johns. Ch., 562; 1 Hopkins, 429, 435.

*Bradley B. Burt,* the respondent in person, insisted that the court had power to control and regulate the conduct of executors, and cited, *Smith* v. *Lawrence* (11 Paige, 209); Story Eq. Jur., §§ 532, 533 to 534, 578; *People* v. *Norton* (5 Seld., 178); *Wood* v. *Brown* (34 N. Y., 337); *Dubois* v. *Sands* (43 Barb., 416, 417); *Glover* v. *Halley* (2 Brad., 29); Willard on Executors, 36, 37.

WOODRUFF, J. This action and the proofs taken therein, show that an unhappy controversy exists between two brothers, made joint executors of the will of their deceased father. At the same time, the matters of com-

plaint seem to me quite too trivial to warrant any appeal to a court of equity. So far as appears, both are men of good character, of competent business capacity, and of ample responsibility, to answer for their due administration of the estate committed to them, and both received from the testator that mark of high confidence evidenced by the trust reposed in them by the will; a confidence that a court of equity will not override, by withdrawing the powers thus conferred, except upon clear grounds of danger to the interests of those affected by the administration, of which danger the proofs in this case do not show a shadow of pretense.

The personal estate of the testator amounts to about $10,000; and this in part consisted of a bond and mortgage for about $2,700 made by the defendant, and of a balance of account against the plaintiff of upwards of $2,000.

The *testator devised* certain real estate to a third son; bequeathed his household furniture to his granddaughters; gave to the plaintiff and defendant each $1,000; to each of his ten grandchildren $200, to be paid as they respectively arrive at the age of twenty-one years; and, after some other gifts, devises and bequeaths all the rest, residue and remainder of his estate to his executors, "upon trust for the use and benefit of" the plaintiff and defendant equally.

Shortly after the death of the testator, the tin trunk in which he kept his securities, vouchers and papers, was received and examined by the plaintiff and defendant, including the memorandum or statement of account which appears to be the voucher for the indebtedness of the plaintiff to the deceased; after which the defendant, with the knowledge of the plaintiff, and without objection from him, took the trunk to his store and placed it in a safe, which the referee finds was sufficiently secure for their safe keeping.

After probate of the will, the plaintiff demanded the possession of these securities and papers. The defendant refused to permit them to be taken out of his possession.

Whatever debts have appeared, the defendant has paid;

whatever legacies have become payable, he has paid.    He has collected some money.

Neither plaintiff nor defendant appear to have taken any steps toward filing an inventory.

By the terms of an ante-nuptial settlement, an annuity of $135 a year is payable to the widow of the testator, during her natural life.

The plaintiff appears to have insisted that, as he and the defendant were residuary legatees, the property not otherwise specifically bequeathed, should be equally divided and delivered to each, and that each should agree to furnish and pay one-half of the annuity, as from time to time it became due; and that each should, in like manner, pay one-half of the legacies to the grandchildren when they became payable; or, at least, that so much of the estate as was to come to him and his children, should at once be paid over or delivered to him, without waiting for the possible presentation of claims against the estate, or other special provision for the annuity or the legacies to grandchildren.    This the defendant declined.    And being advised by counsel that the executors were each alike entitled to the possession of the securities and papers belonging to the estate, and that it was peculiarly proper that he should retain the vouchers for the indebtedness of the plaintiff, he refused the plaintiff's repeated demands for the possession of the papers in the tin box, consenting that he might see and examine them, but should not take them away from the defendant's possession.

That in this intercourse, between the two brothers, there has been some lack of courtesy and at times some exhibition of temper, the case pretty clearly indicates.

The plaintiff had undoubtedly, on general principles, an equal right with the defendant to the manual custody of the securities, and it is obvious that the defendant, in the assertion of his own equal right, has not manifested a becoming spirit.    But the dispute, as to which should have that manual custody, seems to me quite unimportant.

So long as they were in a safe deposit, in the hands of a

responsible executor, with his consent to their inspection by the other, when any exigency or any convenience to the estate required it, there was no ground for application to any court; certainly not because the one brother did not treat the other with due and fraternal regard, and yield to his wishes.

Without taking any steps for the appointment of appraisers and the making of an inventory, within less than eight months after the probate of the will, without any proof that the defendant had misapplied any funds, or endangered the estate in any manner, and before there was any occasion to call for any account of his administration, the plaintiff filed the present complaint for the appointment of a receiver of the assets, securities, papers and personal property of the deceased; and that the plaintiff and defendant respectively account for their receipts and payments, and pay over to him the residue, and that such receiver proceed to administer the estate.

I think this was properly characterized below as " an original and bold experiment, an undertaking to supersede and displace a trustee and executor created by will upon grounds sanctioned by no precedent, and sustained by no authority."

The judgment appealed from does not attempt to remove the defendant from his office, but it requires him to place the securities and papers in the custody of the president of the City Bank, in the city of Oswego, and to deposit all moneys in his hands or control in that bank; and that both plaintiff and defendant deposit all moneys thereafter collected therein, to be drawn out only on their joint check.

Now assuming, what I presume is in nowise doubted, that this is a safe arrangement as to all parties interested in the estate, it is certainly not an unreasonable one; and if the parties had full confidence in the bank and in its president, it would have been altogether wise and suitable, if the parties, when their relations became such that they could not amicably conduct the administration without some such intermediary, had agreed to it of their own accord.

But the question here is, was there any sufficient ground

for decreeing such a special receivership and making it compulsory ? I think not.

Both of the executors could not have the actual manual keeping of this box of securities each in his own possession.

The defendant had the actual possession in the first instance without objection. He had as much right to retain that possession as the plaintiff had to demand it.

The claim that the plaintiff was entitled to take the possession because he was co-executor *ex vi termini* admits that the defendant would have been immediately entitled to take it again.

The defendant being properly in possession, all that the plaintiff had any just reason for requiring, was, that when any step in the settlement or administration of the estate was to be taken which required the presence of the box or its contents, or any part thereof, they should be produced. No refusal to produce for any such purpose is shown.

If the plaintiff desired to file an inventory, he had the opportunity to make application for the appointment of appraisers, and if the defendant refused to produce the property for appraisal the surrogate had power to compel him.

If the plantiff made a collection, and the defendant refused to produce the bond and mortgage, or other security, for cancellation or surrender, some basis of complaint would exist. Possibly refusals of such nature in either case might warrant an action like the present. Or if, when the proper time arrived, the defendant refused to apply the assets to the payment of debts or legacies, that would have entitled the plaintiff to apply to the surrogate, and perhaps to the Supreme Court. And after the lapse of the eighteen months, the power to call the defendant to account for his administration was ample.

When there is mismanagement, misappropriation, or conduct endangering the interests of the creditors or legatees, it would not be necessary to wait the lapse of the eighteen months, but no such facts exist here.

The case of *Wood* v. *Brown* (34 N. Y., 337), is supposed to warrant the decree made in this case.

I do not deem it disrespectful to say that that case is to be sustained on the single ground on which the decision was placed. It was there found that "the defendant had been guilty of wrong misconduct and mismanagement in the execution of his trust as executor in obtaining and retaining possession and control of the notes, bonds and mortgages belonging to the estate, to the exclusion of the plaintiff; and in refusing the plaintiff access to the same, equal to and in common with him, which greatly embarrassed the administration and *jeopardized* the *interest* of the *beneficiaries* under the will." He had been guilty of a distinct breach of an agreement and a violation of good faith in neglecting to conform to an arrangement mutually entered into for the safe keeping of the securities and the deposit of the moneys of the estate. These facts were deemed to create a case within the jurisdiction of the court, to call him to an account, and on that *sole ground* to sustain the decree which was made.

Here the estate is in no danger; the defendant has performed every duty in the administration which was required or due, and his sole fault is that he has not accorded to the plaintiff that unlimited access to and control over the securities, which would have been most agreeable to the latter. With the contents of the box, and the nature and condition of the securities, the plaintiff has all due acquaintance, and it is not shown that any more free access to, or control over the papers than he has had, would have served any purpose whatever beneficial to the estate, or those interested therein.

It is true, that the referee says in his report, that the defendant "has embarrassed and hindered the administration and settlement of the estate;" but this language is to be understood and construed in connection with all the facts, for it is "by retaining possession and control, &c.," under the circumstances, in substance above detailed, that he has done so. And when so understood, it will be seen that this sup-

posed embarrassment consists solely in the fact that the personal relations of the plaintiff and defendant have become inharmonious and unpleasant.

It further appeared on the trial that the defendant, pending this suit, and when the eighteen months prescribed by statute had elapsed, was cited to render his account, and did account before the surrogate.

There was, therefore, when the complaint was filed, no ground of mismanagement, misappropriation or danger to the estate warranting any call on the defendant to account. The time when in due course of administration he could be called to account had not arrived; and, when that period did arrive, he did account, on citation, to the proper tribunal.

In my opinion the complaint herein should have been dismissed, and the judgment rendered below should be reversed, with costs.

All the judges concurring.

Judgment reversed.