MARGARET J. WILMERDING, Respondent, *v.* JOHN McKESSON, Appellant, Impleaded with GEORGE G. WILMERDING.,

*Executors — liability of one, for the wrongful conversion of securities by his co-executor —for allowing moneys of the estate to be deposited by his co-executor with a firm of which the latter is a member — for failing to divide the estate as directed by the testator — how far he is affected by knowledge acquired by the executors' clerk — how far, by joining in the execution of a satisfaction piece of a mortgage.*

An executor, who allows his co-executor to deposit the funds of the estate with a firm of which the latter is a member, is personally liable to those interested in the estate for any loss they may thereby sustain.

An executor who allows his co-executor to receive and retain in his possession all the securities belonging to the estate is not liable for the wrongful acts of the latter in misappropriating the said securities and converting them to his own use, when he had no reason to suspect he contemplated so doing, and when it appears that the executor so betraying his trust was a son of the testator, and had, during his father's lifetime, acquired a faultless reputation as a competent, intelligent, reliable and faithful business man, and had preserved that reputation in the community up to the time when his conversion of the said securities became known.

The fact that the will required the executors to set apart from the estate the shares bequeathed and devised in trust for the testator's daughters and infant sons, and that such separation was in fact never made, would not render an executor liable for such a conversion of the securities of the estate by his co-executor, when it appears that the loss did not follow from and cannot be attributed to the omission to comply with this direction of the testator.

The fact that a clerk, jointly selected by the executors to keep the accounts of the estate, discovers that one of the executors is converting the securities to his own use, will not render his co-executor liable for the loss, when the knowledge so acquired by the clerk is not communicated to him.

An executor, who joins with his co-executor in satisfying a mortgage, in order to render the discharge more formal, but who receives no portion of the moneys arising therefrom, is not liable for the conversion of such moneys by his co-executor.

Appeal from a judgment, recovered on trial at the Special Term, and from an order denying a motion for a new trial, made on the ground of newly discovered evidence.

*Wm. Allen Butler*, for the appellant.

*S. P. Nash*, for the respondent.

Daniels, J.:

The plaintiff, who is a daughter of William E. Wilmerding, deceased, instituted this action to charge the defendants, as two of the executors of his estate, and also as trustees and guardians of his minor children, with certain losses sustained by the estate in the administration of its affairs. The testator died on the 11th of April, 1860, leaving a large estate, consisting of both real and personal property. He was three times married. The defendant, George G. Wilmerding, who was appointed one of the executors, trustees and guardians, was his son by the first marriage, and the plaintiff, his daughter by his second marriage. He also had children by the third marriage, but they are not required to be noticed in the consideration of the points presented for decision by this appeal.

By his will he appointed other executors to act with this son in the management and administration of his estate, three of whom qualified as such, and to them and the defendant George G. Wilmerding, letters testamentary were issued on the 11th of May, 1860. One of these executors, who was another son of the testator, died about ten years preceding the time of the trial, which took place in April, 1880. Another of the executors, George D. Gillespie, took no part in the administration of the affairs of the estate, but that was confined solely to the two defendants, against whom this action has been prosecuted. Previous to the time of the testator's decease, his sons George G., Charles H. and John C. Wilmerding, were, with him, members of the mercantile firm of Wilmerdings & Mount, and they, together with Mount, continued the business after the decease of the testator. At the time of his decease a large amount of his estate was employed in this business as its capital, and on the 1st of January, 1861, it was entered upon the books of the estate as a debt against the firm, amounting to the sum of $170,041.72.

The new firm succeeding to and carrying on the business of that which had preceded it, with the testator as one of its members, liquidated and settled the affairs of the old firm, and carried on and transacted the same business. This business continued until October, 1874, when the firm failed, and in consequence of its failure a very large loss, amounting to near the sum of $150,000,

was sustained by the testator's estate. In this loss the interest of the plaintiff in the estate was to a very great extent included, and it was to protect herself against that loss that this action was instituted and carried on by her. In support of it the evidence established the fact that the loss was caused solely by the conduct and mismanagement of the plaintiff's half-brother George G. Wilmerding. From the time of his appointment as executor under the will he had sole control of the financial affairs of the estate down to the time of the failure of his firm, when the management was taken out of his hands by the defendant John McKesson, concerning whose conduct after that time no complaint whatever has been made. The executor George G. Wilmerding also had, during the time mentioned, the sole control and custody of the securities of the estate, the other executor, McKesson, interfering no further than to select and approve of securities in which the financial capital of the estate was chiefly invested. As these were selected or approved by McKesson they were taken by the executor George G. Wilmerding and a corresponding amount of the funds of the estate invested in them, and after the securities were so taken they remained in the sole custody and charge of himself.

In the course of the administration of the affairs of the estate moneys were realized from it which were paid to the firm of Wilmerdings & Mount, under the authority of the executor George G. Wilmerding, and it is reasonably certain from the evidence that these moneys were used from time to time as they remained in the possession of the firm in its business. This was clearly an unlawful and unauthorized use of the funds of the estate. (Hill on Trustees [3d Am. ed.], 550, note; 551, note, and the cases there cited; Perry on Trusts [2d ed.], § 464.) Funds of the estate were deposited and used in this manner in the business of Wilmerdings & Mount, down to and including the time of its failure. In the year 1869 when the plaintiff, who was one of the beneficiaries under the will, became of age, the books at that time showed a credit in favor of the estate against this firm of the sum of $14,980. This was reduced during the succeeding year to the extent of a little over $1,000, but by the end of the following year the balance was increased to the sum of $17,315.12. That balance was not afterwards reduced, but apparently continued in the business and was

included in the larger amounts afterwards added to it until the time of the failure of the firm. It consequently was a loss to this extent to the estate, arising out of the unlawful act of mingling its funds with those of the business in which the executor George G. Wilmerding was engaged, and he, beyond question, was liable to indemnify the estate against the consequences of this loss.

To charge the executor McKesson also with this loss was one of the purposes of this action. It was not claimed that he had personally by any act on his part contributed to the production of this result, but it was alleged that he had knowledge of this misuse of these funds of the estate, and failed in any manner to interpose for the purpose of correcting it. The learned judge presiding at the trial found, as a fact, that this allegation had been proved by the evidence, and if that conclusion was properly sustained by the proof, it would appear to follow that McKesson, by his omission to interfere for the protection of the estate against this misuse of its funds, had made himself a party to it, and in that manner had become liable for the loss resulting from this source to the estate. To show the existence of this knowledge, it was proven that after the appointment of the executors, a bank account was opened with the Chemical Bank, in the city of New York, in the name of George G. Wilmerding as executor. This was done under the direction of the executors, given by them at their first regular meeting, and under that authority an account was kept in this form with the estate, according to the testimony of the defendant McKesson, for a year or two; but by the testimony of Jones, the book-keeper, who was more likely to be accurate upon the subject, it continued to the year 1866. Then it was terminated and the funds of the estate were wholly deposited from that time with the firm of Wilmerdings and Mount. That this bank account was discontinued with the knowledge of the defendant McKesson, appears from his own evidence, and, as a man experienced in the affairs of business, it is only reasonable to suppose that he understood that a certain amount of money would be constantly passing through the hands of George G. Wilmerding, as the more active executor in the management of the affairs of the estate, and as there was no other depository provided for them, that he would probably deposit such moneys in the business in which he was engaged, and the fact that

he did that is very clearly shown by the evidence given by Jones, the book-keeper. But the fact of the knowledge or understanding on the part of McKesson of this use of the funds, is not solely dependent upon these circumstances, for it was made to appear that an accounting concerning the affairs of this estate was had before the surrogate in the year 1869. The account presented and passed by the executors was verified by three of them, including the defendant McKesson. That was done in the usual form, and the verification contained the statement that the charges in the account for its increase in value were correctly made, and among those charges were allowances made by the firm of Wilmerdings & Mount, of interest in favor of the estate. This interest had, apparently, no other source for its allowance than the moneys of the estate in the possession of and used by the firm, and from its allowance the inference is quite direct that McKesson must have known and understood that this firm were using the funds of this estate His testimony is that he had no knowledge or notice of such use, but the presumption of knowledge or notice arising out of these circumstances was so decided as to overcome the evidence given by him upon the subject. As it was contained in the case, there was sufficient to justify the finding already referred to, upon which the defendant McKesson has been held liable to the plaintiff, so far as she was injured by the loss of the balance of the moneys of the estate, appearing to be in the possession of this firm at the close of the year 1871. To that extent, certainly, the judgment from which the appeal has been taken appears to be right.

But the principal part of the recovery in the case has proceeded upon the misappropriation of its securities, which were chiefly made in the years 1871, 1872, 1873 and 1874, and whether this portion of the judgment can be sustained as correctly given, is the more important subject of controversy upon this appeal. These securities, as has been already observed, were solely in the possession and under the charge of the executor George G. Wilmerding. In that part of the administration of the estate the defendant McKesson in no manner participated, and the acts by which the securities were misappropriated are independent of and clearly distinguishable from the deposit of the funds of the estate with the firm, as they were received and disbursed in the course of its necessary administration,

for those deposits included only the amounts necessarily realized from the proper and legal administration of the affairs of the estate, while this misappropriation of the securities was a willful, dishonest and wrongful abstraction and sale of them by the executor George G. Wilmerding. His acts in disposing of these securities were in direct conflict with all his obligations and duties as an executor, and were prompted by the evident intention of despoiling the estate. In their performance, he ceased to act as an executor and was a wrongdoer as completely and effectually as though the depositary of the securities had been feloniously broken open and the estate had been plundered by means of that act. The other defendant had no knowledge of its commission and no reason to suspect that it was contemplated, but when it was discovered by him, he speedily took measures to protect the estate against its further spoliation by the act of this faithless executor.

It appeared by the evidence that this executor, George G. Wilmerding, had, during the lifetime of his father, acquired a faultless reputation as a competent, intelligent, reliable and faithful business man, and this continued to be his standing in the community until his defalcation as one of the executors of this estate was brought to light. For that reason the defendant McKesson can be legally chargeable with no neglect, inattention or misconduct whatsoever in permitting the securities of this estate to remain in the possession and custody of this individual executor; and, as he was in no sense a party to this abstraction and misappropriation of the securities, and had no reason for suspecting that it was either intended or contemplated by the person who was guilty of it, he was not liable for the loss sustained by reason of it by this estate, for that resulted wholly and exclusively from the misconduct of the other executor, for which, as the law upon this subject is settled, McKesson himself was not liable. This principle has been frequently considered by the courts of this country and those of England, and it has become firmly fixed as an important legal rule, prescribed and maintained to define the liabilities not only of executors, but also of trustees and guardians, in all of which capacities these defendants acted under the terms of the testator's will. As this principle has been lucidly stated, it has come to be established that " a *devastavit* by one of two executors or administrators shall not charge his com-

panion, provided he has not, intentionally or otherwise, contributed to it. For the testator's having misplaced his confidence in one, shall not operate to the prejudice of the other." (Williams on Executors [6th Am. ed.], 1820.) It has been frequently quoted and applied and its accuracy is accepted with uniformity by the courts of this State, the United States and of other States. (*Adair* v. *Brimmer*, 74 N. Y., 541; *Ormiston* v. *Olcott*, 84 id., 339; *Sutherland* v. *Brush*, 7 Johns. Ch., 17; *Peter* v. *Beverly*, 10 Pet., 532; *McKim* v. *Aulbach*, 130 Mass., 481; *Croft* v. *Williams*, 88 N. Y., 384.)

The will of the testator required that the shares of his estate bequeathed and devised in trust, during the lifetime of his daughters, and the minority of his infant sons, should be set apart and separately appropriated by the executors for them, and declared by some proper instrument under seal, to be acknowledged as deeds of land were required to be; from which day that which was so appropriated for each trust should alone be liable therefor, and the rest of the estate freed from such charge, gift and legacy. This separation of the estate never was made by the executors, so far as these children were interested in it by the terms of the will. A gross amount was transferred in form by the executors to three of the persons, including the defendant McKesson, who were designated by the testator as the guardians of the persons and estates of his minor children. The sum so set apart consisted in the aggregate of $148,932.75. Of this sum $108,932.75 was in cash and the residue in stock of the corporation of the city of New York. A separate account was kept upon the books with each one of these children, in such a form as to distinguish and exhibit his or her interest in the capital and proceeds of this fund, and the cash so received was invested in proper securities for the benefit of the persons entitled to the proceeds of this part of the estate, but no separation of these securities was at any time in any other form made, either by the executors, trustees or guardians. The excuse assigned for this omission was that it was not practicable, as the securities had been taken, to apportion them properly between these several interests. The excuse, however, had no probable foundation to rest upon, for it was practicable to make the investment in such a manner as to allow this direction given by

the testator to be observed and performed. But the fact that the statement cannot properly be accepted as a legal excuse for this omission, and that the omission itself occurred, will not, in any proper view which can be taken of their effect, render the defendant McKesson chargeable with the loss sustained by the plaintiff or the estate, in consequence of the receiving, taking and misappropriation of this part of the securities by the defendant George G. Wilmerding. For the loss itself did not follow from and cannot be attributed to the omission to comply with this direction of the testator. It is entirely manifest that the securities misappropriated were not taken and disposed of because of the omission to make this separation. That circumstances would not in the nature of things enter as a factor into the commission of such a wrong. But when the intent had been deliberately formed to take the securities, those which would be regarded as the most available would be the ones which would ordinarily be subjected to the rapacity of the wrong-doer. And such was probably the inducement operating upon the mind of the defaulting executor in the selection of the securities disposed of by him. The motive inducing his conduct was the raising of money through the unlawful abstraction and sale of a portion of the securities of this estate, and to attain that end their separation and division, or the omission to make it, would have no influence whatever over the selection of those made the subject of this unlawful disposition. This conclusion is not without actual proof in the case, for it appeared by the evidence that certain securities had been in fact set apart to raise the annuities of $7,000 for the widow of the testator, who died shortly before the failure of this firm, and $2,000 for two other persons, in the manner provided for by the will. After this separation had taken place, bonds and mortgages included in it were paid off and United States bonds substituted in their places, and these particular bonds were among the securities taken and appropriated by this executor. It is reasonably clear from this circumstance, as well as the consideration already given to this subject, that the fact of the securities being separated would have had no effect whatever in diverting this executor from the execution of his unlawful purpose. He was ready to despoil the children of the testator and deprive them of the provisions made for their support and maintenance, as well as the

widow, provided only that the securities made the subject of his disposition should be such as would best promote his unlawful intention. In this respect he evidently had no personal preferences, and no reason exists for supposing that either one of the persons interested in this part of the estate enjoyed any such favorable consideration from him as would warrant the conclusion that he or she could by any possibility on that account escape the consequences of his rapacity. It was not because this portion of the estate had not been separated and set apart, as the testator directed that to be done, that the securities were misappropriated, but it was for the reason that those taken proved the most acceptable to the person making this unlawful use of them. And because of that circumstance the defendant McKesson cannot be held liable simply because of his omission as an executor to conform to this direction as it is contained in the testator's will.

Soon after the appointment of the executors they jointly selected an accountant to keep the accounts pertaining to the administration of the estate, and it appeared by his evidence that in 1872 a misappropriation of the securities of the estate became apparent from the accounts, and in the following year this was still further evident. By reason of this circumstance it has been urged that McKesson became chargeable with constructive knowledge of the maladministration of this other executor, and consequently liable for the loss sustained through his acts by the estate. But this accountant was not solely the clerk or representative of the defendant McKesson in the performance of his duties. He was selected by all the executors acting together and was in their joint service, and for that reason one of them could not be properly charged with the loss produced by the unlawful act of another simply because this person had discovered the existence of the wrong. This discovery was in no manner communicated to the defendant McKesson. The omission may have been, and probably was, a breach of duty on the part of the accountant, but the law requires something beyond that to render an executor, not in fault, chargeable with such a loss to the estate, for that liability has been made to depend upon some actual default, inattention or acquiescence in the unauthorized act of the other executor to render the one not engaged in its commission liable for its consequences. He, himself, must be indi-

vidually in fault in some respect before such a liability can be imposed upon him; and the existence of knowledge of this nature acquired by a person in the joint employment of the executors will not justify the imputation of any such fault to him. As long as he himself was innocent, as he was, and involved in no fault or violation of his own duties or obligations, this circumstance cannot render him liable in the case.

In some of the mortgages which were discharged the defendant McKesson joined in the discharge, but it was simply for the purpose of rendering the instrument more formal than it otherwise would be, and without receiving any portion of the money arising out of the discharge of such securities. He was also aware of the sale of the Inebriate Asylum bonds held as a part of the estate; but neither of these circumstances, nor both together, will sustain the judgment which has been recovered, for the proceeds wholly went into the hands of the defaulting executor and McKesson had then no reason whatever for suspecting his integrity or his fidelity. And as to the proceeds of the bonds he received assurances, concerning the use which would soon be required for them, well calculated to set at rest any suspicion whatever which might arise in his mind as to the safety and disposition of the fund produced by them. In no view which the facts will justify in this case was McKesson responsible for this misappropriation of the securities of the estate; and to that extent, certainly, the judgment was erroneous and cannot be sustained.

After the plaintiff became of age the estate continued to be administered in her behalf precisely the same as though that event had not occurred. The executors by that circumstance, in 1869, became entitled to relieve themselves from all responsibility over her share of the estate as her guardians, but they omitted to do so, and continued to administer it precisely the same as they had previously done. So far as a trust had been created in her favor, this was authorized by the terms of the will, and the executors appear to have been actuated by that understanding. For that reason the comparatively small loss sustained by the plaintiff by depositing the trust funds received out of the regular administration of the estate, with the firm of Wilmerding & Mount, could not be affected by the provisions of the statute of limitations. The trust

proceeded, in all respects, the same as it had been provided for in its creation, and it is well settled that the statute of limitations is no answer to a liability arising under circumstances of this nature. (*Gratz* v. *Prevost,* 6 Wheaton, 481.)

The ground upon which the application was made for a new trial, was that an instrument had been found, executed by the executors, making a separation of so much of the estate of the testator for the benefit of his widow, as was necessary to raise her annuity. But it was properly denied for the reason that this instrument would probably have been discovered and produced upon the trial, if it had been diligently searched for before the time when it was needed. And in addition to that, such an actual separation of the securities of the estate appeared, as a matter of fact, to have been made. The production of this instrument upon the trial would not have materially changed the case as it was presented, although it might, in the judgment of the court, have reduced the amount for which the defendant McKesson was declared to be liable. Under the circumstances, as they appeared and should have had effect in the case, the production and proof of this formal instrument would have been of no particular service to this defendant. The order refusing to open the judgment on account of its discovery, was right and should be affirmed, with the usual costs. But for the reasons already assigned in considering the effect of the evidence given and the facts found in the case, the judgment itself should be reversed, inasmuch as no intelligible reduction of it can probably be made, and a new trial ordered, with costs to abide the event.

Brady, P. J., and Barker, J., concurred.

Judgment reversed, new trial ordered, costs to abide event.