NEW YORK COUNTY.—HON. D. G. ROLLINS, SURROGATE.—April, 1887.

CHAMBERS *v.* CRUIKSHANK.

*In the matter of the estate of* JOHN F. DELAPLAINE, *deceased.*

The occasion for enforcing a joint custody of property, on the part of disagreeing executors, as permitted by Code Civ. Pro., § 2602, is properly deemed to have arisen, whenever the circumstances are such that joint custody pursuant to an agreement of the executors themselves would commend itself to the Surrogate as suitable and wise.

The purpose of the legislature, in enacting the section cited was expressly to modify the rule of law, according to which each of two or more co-representatives is entitled, in an ordinary case, to collect the decedent's personal estate, and hold it in his own possession, apart from the control of his associates.

APPLICATION by Talbot W. Chambers, one of the executors of decedent's will, for an order directing a deposit of money and property to the joint credit, and in the joint custody, of himself and his co-executor.

JOSEPH A. WELCH, *for executor Chambers.*

BILLINGS & CARDOZO, *for executor Cruikshank.*

THE SURROGATE.—Section 2602 of the Code of Civil Procedure provides, among other things, that, where there is a disagreement between two or more executors of an estate, respecting the custody of its money or of its property, the Surrogate, upon the application of one or more such executors, " may, in his discretion, make an order directing that any property of the estate be deposited in a safe place, in the joint custody of the executors, or subject to their joint order, and that the money of the estate be deposited in a specified bank or trust company to their joint credit, and to be drawn out upon their joint order."

The money and property of the estate of this testator are now under the exclusive control of one of its two executors, Mr. James Cruikshank. His co-executor, Mr. Talbot W. Chambers, seeks, by the present proceeding, to obtain an order directing that such money be deposited to the joint credit of himself and his associate, and that such property, other than money, be placed in the joint custody of the two, or subject to their joint order.

The testator's will was admitted to probate in 1885. In March, 1886, letters testamentary were issued to the respondent. The petitioner did not qualify as executor until September, 1886. Meanwhile the respondent had taken possession of the personal property of the estate, amounting in value to over $125,000, and he had commenced an action for the construction of the testator's will, in which action the counsel

who represent him in the present proceeding had appeared in his behalf.

At some time prior to November 29th, 1886, the petitioner called upon the respondent for conference in the affairs of the estate, and communicated to him the fact that he, the petitioner, had retained counsel to aid in its administration. The respondent then protested that the counsel, whose services he had himself secured, prior to the petitioner's qualification as executor, were equal to the satisfactory performance of such legal services as the best interests of the estate would probably require. Subsequent to this interview, and on November 29th, the petitioner wrote the respondent, saying that, in view of the importance of the trusts committed to their joint care, and the extent of the property concerned, he "should feel safer" if his own attorney, in whom he had full confidence, should be employed as one of the counsel of the estate.

On November 30th, this attorney addressed a letter to the respondent, asking in the petitioner's behalf the payment of a retaining fee of $1,000. A few days later the respondent replied to this letter as follows: "I respectfully decline to pay to you the sum named, or any part thereof, for the simple reason that your appointment was made without my knowledge or assent, or that of the counsel of the estate appointed by me at the time I was the sole qualified and acting executor."

On December 9th, the petitioner again wrote his co-executor, requesting payment of the sum of $1,200 "to defray expenses of administration." The respondent, replying to this letter on December 14th, said:

" As the sum for which you ask would be chargeable against me as executor, I beg to inquire the nature of the expenses for which the payment is to be made. Upon receiving this information I will confer with the counsel for the estate, and promptly act upon his advice in the matter."

On December 17th, the petitioner answered to the effect that the sum for which he asked was to be expended in payment of his counsel ; that his course in retaining such counsel was " an act of prudence," and that he was empowered equally with the respondent to secure, at the charge of the estate, such legal services as its interests might seem to demand.

In a letter dated December 22d, the respondent declined to accede to the petitioner's request. On January 10th, 1887, the petitioner proposed in writing to the respondent that the assets in the latter's hands be placed under their joint control. By letter of January 17th, this proposition was rejected. On January 20th, the petitioner commenced the present proceeding.

Whatever doubts might have existed before the adoption of the Code of Civil Procedure respecting the authority of the Surrogate to make such an order as is here applied for, such authority is now expressly conferred by the above quoted provisions of § 2602. That section was evidently suggested to the Code Commissioners by decisions theretofore rendered in Wood v. Brown (34 *N. Y.*, 337) and in Burt v. Burt (41 *N. Y.*, 46).

In Wood v. Brown, the Court of Appeals had affirmed a judgment of the Supreme court, by which

it had been ordered, in an action between co-executors who had disagreed respecting the custody of estate funds, that such funds should be placed in a specified depository, subject to the joint order of the plaintiff and the defendant.

In Burt v. Burt, on the other hand, the Court of Appeals, upon a different state of facts, had sustained the Supreme court in its reversal of a judgment, directing, in an action brought by one of two executors against his associate, a joint deposit and joint custody of the assets of their testator's estate.

WOODRUFF, J., who pronounced the opinion of the court in the latter of these cases, declared that the decision in the former rested solely upon the ground that the conduct of the defendant executor was such as to jeopard the interests of the beneficiaries under the will.

In Burt v. Burt, the special relief sought by the plaintiff was the appointment of a receiver who should take possession of all the assets of a testator's estate, and practically expel from office the persons whom the testator had selected as his executors. The referee, before whom the cause had been tried, had pronounced against the plaintiff's demand for a receiver, but, under a claim for general relief, had found that the assets concerned in the litigation should be deposited in a specified bank, subject to the plaintiff's and the defendant's joint control.

The case was like the case at bar, and unlike that of Wood v. Brown, in the circumstance that no question was made respecting the safety of the fund involved or the responsibility of its custodian. It

differed from the case at bar in the circumstance that the defendant executor had taken possession of such funds after his complaining associate had obtained letters testamentary and with such associate's knowledge and acquiescence.

In commenting upon these circumstances Judge WOODRUFF said: "Both of the executors could not have the actual manual keeping of this box of securities, each in his own possession. The defendant had the actual possession in the first instance without objection. He had as much right to retain that possession as the plaintiff had to demand it. The claim that the plaintiff was entitled to take it because he was co-executor, *ex vi termini* admits that the defendant would have been immediately entitled to take it again.

It is a well known doctrine of the law that where there are two or more executors of an estate "they are regarded but as one person representing the testator, and therefore the acts done by any one of them, which relate either to the delivery, gift, sale, payment, possession or release of the testator's goods, are deemed the acts of all; for they have a joint and entire authority." One of them is as much entitled as any of the others, in the absence of specific directions to the contrary, either in the will of their testator, or in the lawful order, judgment or decree of a competent court, to collect the personal estate and to hold it in his own possession, apart from the control of his associates (Murray v. Blatchford, 1 *Wend.*, 583, 616; Hertell v. Bogert, 9 *Paige*, 52; Douglass v. Satterlee, 11 *Johns.*, 16; Sutherland v. Brush, 7

*Johns. Ch.*, 17 ; Brennan v. Lane, 4 *Dem.*, 322 ; Hall v. Carter, 8 *Ga.*, 388 ; Wheeler v. Wheeler, 9 *Cow.*, 34).

But it seems to me that, in the enactment of the provision upon which the present application is based, it was the express purpose of the legislature to modify the rule of law, which, but for that provision, might make such an application, either to the Supreme court or to the Surrogate, ineffectual.

In Burt v. Burt, the court said that, as the relations of the plaintiff executor and the defendant executor had ceased to be amicable, " it would have been altogether wise and suitable " if they had of their own motion made joint deposit of the funds which the testator had confided to their charge.

This suggests what seems to me the most satisfactory test by which to determine, in any given case, whether the discretionary authority, now expressly conferred upon the Surrogate by § 2602 of the Code, should or should not be exercised. The occasion for enforcing a joint custody is found to have arisen,. whenever the circumstances are such that joint custody, pursuant to an agreement of the executors themselves, would commend itself to the Surrogate as suitable and wise.

Now, there is nothing in the will of this testator indicating that he reposed greater trust and confidence in one of the parties to this proceeding than in the other ; there is nothing in the papers before me tending to show that it would impair the security of the property of the estate to take it from the sole custody of the respondent and place it in the joint custody of

himself and his associate. For aught that appears, they can meet together without inconvenience whenever conference or combined action shall be necessary or desirable. It is not shown that the interests of the estate would be prejudiced by requiring a joint custody of its assets. And there are certain considerations which seem to make such joint custody desirable.

By § 2736 of the Code of Civil Procedure, the executorial service that may be rendered in the administration of this estate, if its value above debts shall exceed one hundred thousand dollars, will be compensated by two full commissions. These commissions must be apportioned between the executors " according to the services rendered by them respectively." If this petitioner is willing and competent to perform his full share of the duty confided to him by the will, it is hardly just, unless it is unavoidable, to sustain the respondent, in a contention which will practically secure to him, besides the compensation that he would have been entitled to claim if the testator had named him as sole executor, a like compensation for excluding his co-executor from sharing in the administration.

The affidavits and the brief submitted on behalf of the respondent, disclose that he has what seems to me to be a mistaken notion as to the respective rights of the petitioner and himself in the employment of counsel. The counsel whom he has retained are repeatedly called " counsel for the estate," as distinguished from counsel employed by the petitioning executor. It is doubtless true that where one of several executors, who has alone qualified, has employed lawyers of learning and ability to represent the estate of his testator

in the courts, the claim of another executor subsequently qualifying, to be reimbursed out of such estate for moneys expended in securing additional counsel, should not be allowed upon an accounting without strong evidence in its support; but in such a case counsel retained by the executor first qualifying are no more to be regarded as " counsel for the estate " than are counsel retained by such executor's associate.

Whether in the present case the petitioning executor has acted prudently and properly in calling additional counsel to his aid, need not now be considered. If the order to be entered upon this decision shall enable him to compensate such counsel out of estate funds, he will, of course, do so at the risk of a disallowance of any claim he may make for credit in that regard upon his accounting. His application, except as respects the rents of the testator's real property, is granted; as to such rents it is denied.