Rollins, Surr.
Section 2602 of the Code of Civil Procedure provides, among other things,.that where there is a disagreement between twm or more executors of an estate, respecting the custody of its money or of its property, the .surrogate,..upon the application of one of such executors, “ may, in his discretion, make an order directing that any property of the estate be .deposited in a safe place, in the *415 joint custody of the executors, or subject to their joint order, and that the money of the estate be deposited in a specified bank or trust company, to their joint credit, and to be drawn out upon their joint order.”
The money and property of the estate of this testator are now under the exclusive control of one of its two executors, Mr. James' Cruiksbanlr. Ilis co-executor, Mr. Talbot W. Chambers, seeks by the present proceeding, to obtain an order directing that such money be deposited to the joint credit of himself and his associate, and that such property, other than money, be placed in the joint custody of the two, or subject to their joint order.
The testator’s will was admitted to probate in 1885. In March, 1886, letters testamentary were issued to the respondent. The petitioner did not qualify as executor until September, 1886. Meanwhile the respondent had taken possession of the personal property of the estate, amounting in value to over $125,000, and he had commenced an action for the construction of the testator’s will, in which action the counsel who represent him in the present proceeding had appeared in his behalf.
At some time prior to November 39,1886, the petitioner called upon the respondent for conference in the affairs of the estate, and communicated to him the fact that he, the petitioner, had retained counsel to aid in its administration. The respondent then protested that the counsel, whose services he had himself secured prior to the petitioner’s qualification as executor, were equal to the satisfactory performance of such legal services as the best interest of the estate would probably require. Subsequent to this interview, and on November 29, the "petitioner wrote the respondent, saying that, in view of the importance of the trusts committed to their joint care, and the extent of the property concerned, he “ should feel safer ” if his own attorney, in whom he had full confidence, should be employed as one of the counsel of the estate.
On November 80, this attorney addressed a letter to the *416 respondent, asking in the petitioner’s behalf the payment of a retaining fee of $1,000. A few days latter the respondent replied to this letter as follows : “ I respectfully decline to pay to you the sum named, or any part thereof, for the simple reason that your appointment was made without my knowledge or assent, or that of the counsel of the estate appointed by me at the time I was the sole qualified and acting executor.”
On December 9, the petitioner again wrote his co-executor, requesting payment of the sum of $1,200 “to defray expenses of administration.” The respondent, replying to this letter on December 14, said : “ As the sum for which you ask would be chargeable against me as executor, I. beg to inquire the nature of the expenses for which the payment is to be made. Upon receiving this information I will confer with the counsel for the estate, and promptly act upon his advice in the matter.”
On December 17 the petitioner answered to the effect that the sum for which he asked was to be expended in payment of his counsel; that his course in retaining such counsel was “an act of prudence.” and that he was empowered equally with the respondent to secure, at the charge of the estate, such legal services as- its interest might seem to demand.
In a letter dated December 22, the respondent declined to accede to the petitioner’s request. On January 10,1887, the petitioner proposed in writing to the respondent, that the assets in the latter’s hands be placed under their joint control. By .letter of January 17,. this proposition was rejected. On January 20, the petitioner commenced the present proceeding.
Whatever doubts might have existed before the, adoption of the Code of Oivil Procedure, respecting the authority of the surrogate to make such an order as is here applied for, such authority is now expressly conferred by the- above quoted provisions of section 2602. That section was evidently suggested to the Code Commissioners by decisions *417 heretofore rendered in Wood v. Brown (34 N. Y. 337) and in Burt v. Burt (41 N. Y. 46).
In Wood v. Brown, the court of appeals had affirmed a judgment of the supreme court, by which it had been ordered, in an action between co-executors who had disagreed respecting the custody of estate funds, that such funds should be placed in a specified depository subject to the joint order of the plaintiff and defendant.
In Burt v. Burt, on the other hand, the court of appeals, upon a different state of facts, had sustained the supreme court in its reversal of a judgment, directing, in an action brought by one of two executors against his associate,, a joint deposit and joint custody of the assets of their testator’s estate.
Woodruff, J.,
who pronounced the opinion of the court in the latter of these cases, declared that the decision in-the former rested solely upon the ground that the conduct of the defendant executor was such as to jeopard the interests of the beneficiaries under the will.
In Burt v. Burt the special relief sought by the plaintiff' was the appointment of a receiver who should take possession of all the assets of the testator’s estate, and practically expel from office the persons whom the- testator had: selected as his executors. The referee, before whom the canse, had been tried, had pronounced against the plaintiff’s, demand for a receiver, but under a claim for general- relief1,, had found that the assets concerned in the litigation should' be deposited in a specified bank, subject to the plaintiff’s and the defendant’s joint control.
The case was like the case at bar, and unlike that of Wood v. Brown, in the circumstance that no question was made respecting the safety of the fund involved or the responsibility of its custodian. It differed from the case at bar in the circumstance that the defendant executor had taken possession of such fund after his complaining associate had obtained letters testamentary, and with such associate’s knowledge and acquiescence. ■
*418 In.commenting upon these circumstances, Judge Woon•®uff said : “ Both of the executors could not have the actual ¡manual keeping of this box of securities, each in his own ¡possession. ‘ The defendant had the actual possession in the •first instance without objection. He had as much right of retain that possession as the plaintiff had to demand it. The claim that the plaintiff was entitled to take it because he was co executor, ex vi termini, admits that the defendant would have been immediately entitled to take it again.
It is a well known doctrine of the law that where there •there are two or more executors of an estate 16 they are .regarded but as one person representing the testator, and .therefore the acts done by .any one of them, which relate either to the delivery, gift, sale, payment, possession of ,-release of the testator’s goods, are deemed the acts of all; for they have a joint and entire authority.” One of them ■'is as much entitled as any. of the others, in the absence of ¡specific directions to tho contrary, either in the will of their testator or in the lawful order, judgment or decree of a . competent court, to collect the personal estate and to hold it in his own possession, apart from the control of his associates (Murray v. Blatchford, 1 Wend. 583, 616; Hertell v. Bogert, 9 Paige, 52 : Douglass v. Satterlee, 11 Johns. 16 ; Sutherland v. Brush, 7 Johns. Ch. 17; Brennan v. Lane, 4 Dem. 322 ; Hall v. Carter, 8 Ga. 388; Wheeler v. Wheeler, 9 Cow. 34.)
But it seems to me that, in the enactment of the provision upon which the present application is based, it was the • express purpose of the legislature to modify the rule of law which, but for that provision, might make such an application either to the supreme court or to the. surrogate, ineffectual.
In Burt v. Burt, the court said that, as the relations of the plaintiff executor and the defendant executor had ceased to be amicable, “it would have been altogether wise and suitable ” if they had of their own motion made joint deposit of the funds which the testator had confided to their charge.
*419 This suggests what seems to me the most satisfactory test by which to determine in any given case, whether the discretionary authority, now expressly conferred upon the -surrogate by section 2602 of the Code, should, or should not be exercised. The occasion for enforcing a joint custody is found to have arisen, whenever the circumstances are such that joint custody, pursuant to an agreememt of the executors themselves, would commend itself to the surrogate as suitable and wise.
Now, there is nothing in the will of this testator indicating that he reposed greater trust and confidence in ctoe of the parties to this proceeding than in the other ; there is nothing in the papers before me tending to show that it would impair the security of the property of the estate to take it from the sole custody of the respondent and place it in the joint custody of himself and his associate. For aught that appears they can meet together without inconvenience whenever conference or combined action shall be necessary or desirable. It is not shown that the interests of the estate would be prejudiced by requiring a joint custody of its assets. And there are certain considerations which seem to make such joint custody desirable.
By section 2736 of the Code of Civil Procedure, the executorial service that may be rendered in the administration of this estate, if its value above debts shall exceed one hundred thousand dollars, will be compensated by two full commissions. These commissions must be apportioned between the executors “ according to the services rendered by them respectively. ” If this petitioner is willing and competent to perform his full share of the duty confided to him by the will, it is hardly just, unless it is unavoidable, to sustain the respondent in a contention which will practically secure to him, besides the compensation that he would have been entitled to claim if the testator had named him as sole executor, a like compensation for excluding his coexacujor from sharing in the administration.
The affidavits and the brief submitted on behalf of the *420 respondent disclose that he has what seems to me to be a mistaken notion as to the respective rights of the petionex and himself in the employment of counsel. .The counsel whom he has retained are repeatedly called “ counsel for the estate,” as distinguished from counsel employed by the petitioning executor. It is doubtless true that where one of several executors, who has alone qualified, has employed lawyers of learning and ability to represent the estate of his testator in the courts, the claim of another executor subsequently qualifying, to be reinbursed out of such estate for moneys expended in securing additional counsel, should not be allowed upon an accounting without strong evidence in its support; but in such a case counsel retained by the executor first qualifying are no more to be regarded as “ counsel textile estate,” than are counsel i-etained by such executoi-’s associate.
Whethex-, in the present case, the petitioning executor has acted prudently and pi-opei-ly in calling additional counsel to his aid, need not be considei-ed. If the order to be entered upon this decision shall enable him to compensate such counsel out of the estate funds, he will, of course, do so at the risk of a disallowance of any claim he may make fox; credit in that x-egard upon his accounting. Iiis application, except as respects the rents of the testator’s real property, is gx-anted; as to such rents it is denied.
II. October, 1887.
On appeal from this decision, the Genex-al Term (Van Brunt, P. J., Daniels and Bartlett, JJ.) affirmed the order with costs, upon the opinion of the surrogate.